

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN           AUSTIN 11, TEXAS
XXXXXXXXXXXXXXXXXXRD
ATTORNEY GENERAL

Honorable J. E. Winfree, Chairman
Special Committee of the Houst of
Representatives to investigate the
L.C.R.A. and G.B.R.A.
Austin, Texas

Dear Sir:
                                      Opinion No. O-5117
                                      Re: Authority of the Board of Di-
                                           rectors of the Guadalupe-Blanco
                                           River Authority to employ one
                                           of its own members as General
                                           Manager and as Attorney.

       This is in reply to your letter of March 8, 1943, which reads as
follows:

       "The Special Committee of the House of Representa-
tives appointed to investigate some of the actions of
the Lower Colorado River Authority and the Guadalupe-
Blanco Rivers Authority has adduced evidence to show
that one of the members of the Board of Directors of
the last named authority, who was Chairman of the Board,
in addition to the $10 per diem paid him as a director,
was paid $100 per month as General Manager of the
Authority, and was recently paid the sum of $25,000 as
General Counsel for the Authority.

       "This Committee feels that it is necessary for it to
know the law governing these payments, and requests that
you give the Committee an opinion as to whether or not
the payment to the Chairman of the Board of $100 per
month as General Manager and the payment to him of the
$25,000 attorney's fee is a legal payment. In other
words, did the Board of Directors of the Guadalupe-Blanco
Rivers Authority comply with the law in ordering these
payments made to the Chairman of the Board, who was one
of the Directors?"

       In approaching the answer to your question, we should first ex-
amine the nature of the "Guadalupe-Blanco River Authority." It was first
created in 1933 by Senate Bill No. 97, Chapter 75, page 198, Forty-Third
Legislature, First Called Session. That statute was amended in 1935 by the
passage of House Bill No. 138, Chapter 410, page 1615, Forty-fourth Legis-
lature, First Called Session. There have been no other amendments. We
assume that the transaction about which you asked occurred since 1935.

       The parts of the statute with which we are concerned read as
follows:

"o o o o

"Section 1. There is hereby created within the State of Texas, in addition to the Districts into which the State has heretofore been divided, a Conservation and Reclamation District to be known as 'Guadalupe-Blanco River Authority' (hereinafter called the District) and consisting of that part of the State of Texas which is included within the boundaries of the Counties of Hays, Comal, Guadalupe, Caldwell, Gonzales, DeWitt, Victoria, Kendall, Refugio, and Calhoun. <u>Such District shall be and is hereby declared to be a governmental agency and body politic and corporate, with the rights, privileges, and functions hereinafter specified and the creation of such District is hereby determined to be essential to the accomplishment of the purposes of Section 59 of Article 16 of the Constitution of the State of Texas,</u> including (to the extent hereinafter authorized) the control, storing, preservation and distributing of the waters of the Guadalupe and Blanco Rivers and their tributaries for irrigation, power, and other useful purposes, the reclamation and irrigation of arid, semi-arid and other lands needing irrigation, and the conservation and development of the forests, water and hydro-electric power of the State of Texas. (Emphasis ours)

"o o o

"Sec. 2. Except as expressly limited by this Act, the District shall have and is hereby authorized to exercise all powers, rights, privileges, and functions conferred by general law upon any District or Districts created pursuant to section 59, of Article 16, of the Constitution of the State of Texas. o o o

"o o o

"Sec. 4. The powers, rights, privileges and functions of the District shall be exercised by a board of nine (9) directors (herein called the Board), all of whom shall be residents of and freehold property taxpayers in the State of Texas. Said directors shall be appointed by the Governor from nominations furnished him by the Board of Water Engineers of the State of Texas, and the appointments confirmed by the Senate as in other cases of appointments by the Governor. o o o

"(a) Each director shall receive Ten Dollars ($10) per day for each day spent in attending meetings of the Board, and any other business of the District that the Board thinks necessary, plus actual traveling and other expenses.

". . .

"Sec. 5. The Board shall elect a Secretary who shall keep true and complete records of all proceedings of the Board. Until the appointment of a Secretary or in the event of his absence or inability to act, a secretary pro tem shall be selected by the Board. The Board shall also select a General Manager, who shall be the chief executive officer of the District, and a treasurer. All such officers shall have such powers and duties, shall hold office for such term and be subject to removal in such manner as may be provided in the by-laws. The Board shall fix the compensation of such officers. The Board may appoint such officers, agents and employees, fix their compensation and term of office and the method by which they may be removed, and delegate to them such of its power and duties as it may deem proper. (Emphasis ours)

"Sec. 6. The moneys of the District shall be disbursed only on checks, drafts, orders or other instruments signed by such persons as shall be authorized to sign the same by the by-laws or resolution concurred in by not less than five (5) directors. . . .

"Sec. 7. The domicile of the District shall be in the City of New Braunfels, County of Comal, where the District shall maintain its principal office, in charge of its General Manager. . . .

"Sec. 8. No director, officer, agent or employee of the District shall be directly or indirectly interested in any contract for the purchase of any property or construction of any work by or for the district, and if any such person shall be or become so interested in any such contract, he shall be guilty of a felony and on conviction thereof shall be subject to a fine in an amount not exceeding Ten Thousand Dollars ($10,000) or to confinement in the County jail for not less than one (1) year nor more than ten (10) years, or both.

". . . .

"Sec. 11. The District shall have power and is
hereby authorized to issue, from time to time, bonds
as herein authorized for any corporate purpose. . . ."

It will be noticed that the statute that gives life to the
Guadalupe-Blanco River Authority, towit, House Bill No. 138, Forty-fourth
Legislature, 1st C.S., 1935 , declares it to be "a governmental agency
and body politic and corporate."

No appellate court, insofar as we can find, has diagnosed the
make-up of the Guadalupe-Blanco River Authority, but the appellate courts
have, in at least two cases, commented on the status of the Lower Colorado
River Authority, which was created by a statute very similar to the statute
here involved. In one of these cases, towit, in the case of Lower Colorado
River Authority v. McCraw, 125 Tex. 268, 83 S.W. 2nd 629, the Supreme Court
of Texas said:

". . . It so construted this district as to make
it a state governmental agency within the meaning of
subsection (b) of section 59 (of the Constitution),
supra. This board is selected from the State at large,
and has many duties that are coextensive with the lim-
its of the State. . . ."

In the case of Hedge v. Lower Colorado River Authority, 163 S.W. 2nd 855,
the Court of Civil Appeals at Austin held that bodies like the Lower Colo-
rado River Authority "are political subdivisions of the State of the same
nature and stand upon exactly the same footing as counties, or precincts,
or any of the other political subdivisions of the state."

We now come to the real question before us, which is whether an
officer of a political subdivision of the State can use the power of appoint-
ment vested in such officer to appoint himself to an office or other posi-
tion of responsibility when the statute does not specifically give him such
authority. The answer is clearly "no".

The general rule on this question is stated in 46 Corpus Juris
940 as follows:

"It is contrary to the policy of the law for an
officer to use his official appointing power to place
himself in office, so that, even in the absence of a
statutory inhibition, all officers who have the appoint-
ing power are disqualified for appointment to the of-
fices to which they may appoint; nor can an appointing
board appoint one of its members to an office, even
though his vote is not essential to a majority in favor
of his appointment, and although he was not present

when the appointment was made, and notwithstanding
his term in the appointing body was about to expire;
nor can the result be accomplished indirectly by
his resignation with the intention that his success-
or shall cast his vote for him. . . ."

This specific question has been decided by a Texas appellate
court. In the case of Ehlinger v. Clark, 117 Tex. 547, 8 S.W. 2nd 666, the
Supreme Court of Texas held that a County Commissioners' Court could not
appoint the County Judge, who was a member of the Court, to represent the
County as an attorney for which he could draw compensation, and the Supreme
Court said:

".  .  . If the court in the course of its pro-
ceedings found it necessary to employ an attorney
to collect these notes, then the county judge, as
the presiding officer of that court, had the con-
stitutional and statutory duty imposed upon him of
presiding over the court in its deliberations
while selecting an attorney, and of participating
therein as such officer. On the other hand, if,
after an attorney was employed, it should be found
that the attorney was not performing his duties in
a competent or faithful manner, it would become the
duty of the commissioners' court, presided over by
the county judge, to relieve such attorney of his
duties and empl y another. It is because of the
obvious incompatibility of being both a member of a
body making the appointment and an appointee of that
body that the courts have with great unanimity
throughout the country declared that all officers
who have the appointing power are disqualified for
appointment to the offices to which they may appoint.
29 Cyc. 1381; 22 R.C.S. p. 414, § 56.

"We think the employment of the county judge as an
attorney by the commissioners' court, over which he
presided, comes clearly within the rule that the ap-
pointing power, in this instance the commissioners'
court, cannot appoint as its attorney one of its own
members, to wit, the county judge, as was done in
this case, and that, therefore, the contract of his
employment in so far as it provided for compensation,
was void. . . ."

Practically all of the authorities on this question support
our view, a few of them being Gaw v. Ashley, 195 Mass. 173, 80 N.E. 790,
122 Am. St. Rep. 229; Hornung v. State, 116 Ind. 458, 19 N.E. 151, 2 L.R.
A. 510; Meglemery v. Weissinger, 140 Ky. 558, 131 S.W. 40, 31 L.R.A. (N.S.)

575; Parrish v. Town of Abel, 144 Ga. 242, 86 S.E. 1095; and State v. Dean, 103 Kan. 814, 176 Pac. 633.

This department had a similar question before it in Attorney General's Opinion No. O-410, in which it was held that the Board of Directors of a State supported college could not appoint one of its own members as president of the college. In that opinion this department said:

"... Whether in a given instance the member did actually succeed in completely submerging his personal interest is not a material inquiry. Public duty might triumph in a particular case, but such might not be true the next time and the next. Would we be willing for similar boards and governing bodies to fill appointive offices and places of employment by appointment of their own members? Will public policy permit us to sanction and recognize this practice as an approved method of obtaining appointments? It would tend to cause board members to look with covetous eyes on desirable positions. More than one might be seeking the same place, and personal jealousies would arise. Exchange of favors and the barter of places of public trust would be encouraged. If appointive places should come to be recognized as fair game for members of the appointing board, then there would inevitably be times when membership on the board would come far nearer to getting a man the appointment than all the qualifications he could possess."

It may be that in this case the Board had the welfare of the Guadalupe-Blanco River Authority, and the people it serves, uppermost in mind when it selected its own chairman as General Manager, to draw $100.00 per month as such, and General Counsel, to draw $25,000.00, but the law is clear that such practices must not be tolerated in the absence of special statutory permission, and there is no such statutory permission in this case. Such a rule of law is based on good reason. It is of the highest importance that the governing bodies of political subdivisions be free from every kind of personal influence in selecting the officers and employees who are to serve the public and be paid by the public. It is for that reason that nepotism laws have been passed prohibiting boards and officials from appointing relatives. Boards and officials are under a duty to the public to fill positions with the best men available. If they could appoint themselves, or one of their own members, it would be a temptation to do so in some instances, particularly where the compensation for such appointment could be made lucrative, and thereby the best man available for the position might not be appointed. "And it is out of regard for this human sentiment and weakness, and the fear that the public interest will not be so well protected if appointing bodies are not required to go outside their membership

on the selection of public servants, that the rule announced has been adopted, and ought to be strictly applied." Meglemery v. Weissinger, supra.

In addition to the foregoing reasons we think that the words of the statute, towit, House Bill No. 138, Forty-fourth Legislature, 1st C.S. 1935, indicate that the Legislature intended for the "General Manager" to be a separate person from the Directors, and that the "agents and employees" appointed under the terms of the statute, which would include an attorney, be separate persons from the Directors. The provision for appointing such persons is in Section 5 of the statute, quoted above.

In Section 4 of the statute it provides that each Director shall receive $10.00 per day for each day spent in attending meetings of the Board and other business of the District that the Board thinks necessary. Of course, the Director in question is entitled to compensation under that provision if he qualified under said provision.

Our answer to your question is that the payment to the Chairman of the Board of Directors of the Guadalupe-Blanco River Authority of $100.00 per month as General Manager and the payment to him of $25,000.00 as an attorney's fee are not legal payments.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
/s/ Cecil C. Rotsch
Cecil C. Rotsch
Assistant

APPROVED MAR 11, 1943
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

CCR:mw:egw

APPROVED
Opinion Committee
By BWB Chairman